IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 15-cv-00061-PAB

MELODY ANN BELDEN,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

## ORDER

This matter is before the Court on plaintiff Melody Ann Belden's complaint [Docket No. 1] filed on January 9, 2015. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. BACKGROUND

On April 22, 2011, plaintiff applied for supplemental security income under Title XVI of the Act. R. at 19. Plaintiff alleged that she had been disabled beginning June 1, 2009, but later amended her alleged disability onset date to May 7, 2010. *Id.*[1] After an initial administrative denial of her claim, plaintiff appeared at a hearing conducted by an

---

[1] Plaintiff filed a previous application for supplemental security income on May 7, 2010, which was denied on October 18, 2010. R. at 19.

Administrative Law Judge ("ALJ") on June 5, 2013. *Id.* On June 14, 2013, the ALJ denied plaintiff's claim. *Id.* at 30. The ALJ found that plaintiff had the severe impairments of depression, anxiety, hypochondriasis, memory impairment, and methamphetamine abuse in full remission. *Id.* at 21. The ALJ found that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments, *id.* at 21-22, and found that plaintiff had the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels with the following non-exertional limitations: the claimant is limited to performing simple and routine tasks, in a work environment free of fast-paced production requirements and involving only simple work-related decisions with few, if any, workplace changes.

*Id.* at 22. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff "is capable of performing past relevant work as a clean-up worker," which "does not require the performance of work-related activities precluded by [plaintiff's RFC.]" *Id.* at 28.

The Appeals Council denied plaintiff's request for review of the ALJ's denial. R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

Plaintiff argues that the ALJ erred by (1) improperly weighing the opinions of medical sources; and (2) improperly concluding that plaintiff's testimony concerning her symptoms was not fully credible. *See generally* Docket No. 17. The relevant evidence of record is as follows.

In April 2010, plaintiff was evaluated for substance abuse relapse therapy following a 2009 arrest for possession of methamphetamine. R. at 318-22. Plaintiff's evaluation indicated that she met the criteria for a substance abuse disorder. *Id.* at 322. On July 9, 2010, plaintiff was examined by Dr. James Mockler. R. at 346. Plaintiff reported that she had suffered from memory problems for the previous 12 months. *Id.* Plaintiff described a variety of manifestations of her memory problem, including that she forgot the time of her appointment, forgets what she is saying while talking, forgets where certain items are located, and burns her dinner because she forgets that she is cooking. *Id.*

In September 2010, plaintiff attended a consultative examination performed by Ann Tharp, Ph.D in connection with her first application for benefits. R. at 328-34. Plaintiff reported problems with both short-term and long-term memory. *Id.* at 328. Plaintiff stated that she was able to manage money responsibly, was able to perform all self-care activities and household tasks, and that she sometimes watched her grandson on some evenings. *Id.* at 330. Dr. Tharp noted that plaintiff exhibited moderate impairment in both short and long-term memory and that plaintiff was able to recall 3/3 objects immediately and 1/3 objects after a 5-minute delay. *Id.* at 332. Dr. Tharp found

that plaintiff had a Global Assessment of Functioning ("GAF") score of 49-52,[2] opined that plaintiff's level of depression was 8/10 and her level of anxiety was 10/10, and stated that plaintiff may benefit from vocational counseling in order to improve her work-related skills.  *Id.* at 333-34.

On April 19, 2011, plaintiff saw Dr. Mockler for further treatment for her memory loss.  R. at 349.  Plaintiff stated that she did not recall that she was supposed to follow up after her July 2010 appointment.  *Id.*  Plaintiff reported that "[e]veryone around her tells her that her memory is getting worse and she also thinks it is getting worse."  *Id.*  Plaintiff stated that she felt "healthy overall" and was taking Celexa daily, which helped with her depression but not her memory.  *Id.*  Dr. Mockler ordered an MRI of plaintiff's brain.  *Id.* at 350.  On May 4, 2011, plaintiff underwent an MRI, which was evaluated by Dr. Gary Peet.  *Id.* at 365.  The MRI suggested "subtle swelling and hyperintensity symmetrically involving the hippocampus" which raised "the possibility of subtle/early limbic encephalitis."[3]  *Id.* at 365-66.  Plaintiff returned the same afternoon for additional "thin section coronals," which showed that the "[p]revious questionable findings" were "less evident[.]"  *Id.* at 366.  Dr. Peet stated that, after taking the more detailed images,

---

[2]"The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012) (citing Am. Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32, 34 (Text Revision 4th ed. 2000)).  A GAF score of 41-50 indicates "Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning[.]"  *Id.*  A GAF score of 51-60 indicates "Moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning[.]"  *Id.*

[3]Encephalitis is "[i]nflammation of the brain."  Stedman's Medical Dictionary, encephalitis (28th ed. 2005).

he doubted the clinical significance of the swelling, but stated that, if plaintiff's symptoms of memory loss persisted, a follow-up scan may be appropriate. *Id.* On May 6, 2011, at a follow-up appointment, Dr. Mockler reviewed plaintiff's MRI and noted that the scan appeared normal. R. at 369. Dr. Mockler performed a neurologic examination in which plaintiff was able to repeat three words, but was unable to remember any of the words 5-10 minutes later. *Id.* at 370. After three times, plaintiff was able to draw the time on a clock correctly. *Id.* Dr. Mockler referred plaintiff to a neurologist due to her worsening memory. *Id.*

On August 4, 2011, plaintiff underwent a consultative examination with Gerald Post, Psy.D. R. at 383-95. Tests placed plaintiff in the first percentile or lower in auditory memory, visual memory, visual working memory, immediate memory, and delayed memory. *Id.* at 387. Dr. Post, however, opined that he did not consider plaintiff's test scores to be "valid estimates of her actual level of memory functioning." *Id.* at 386. Dr. Post stated that, "[b]ecause of [plaintiff's] preoccupation with her subjective fears, it appeared that she was unable to focus upon test items and provide appropriate responses" and that plaintiff's test scores, which, if valid, would indicate that plaintiff is "hardly . . . able to function at all," were inconsistent with his interview of plaintiff and her work history. *Id.* Dr. Post noted that, during testing, plaintiff demonstrated "[c]onsiderable impairment in concentration." *Id.* at 387. By way of example, Dr. Post noted that, "while considering responses [plaintiff] often . . . attempted to redirect the conversation to her perceived difficulties with memory, which resulted in the suppression of subtest scores because she did not respond during the

allowed time frames." *Id.* Dr. Post opined, however, that he did not believe plaintiff was attempting to malinger and that her anxiety about her memory problems appeared genuine. *Id.* Dr. Post stated that plaintiff's rest results were not consistent with either dementia or a brain injury, but that plaintiff might meet the criteria for hypochondriasis. *Id.* at 392.

Regarding plaintiff's mental capacity, Dr. Post opined that plaintiff had marked limitations in her ability to understand, remember, and carry out detailed instructions and to sustain concentration and perform at a consistent pace and had moderate limitations in dealing with changes in a routine work setting, but would be able to "learn and perform simple tasks that required little judgment within a few days on the job." *Id.* at 391-92. Dr. Post assigned plaintiff a GAF score of 45. *Id.* at 393. A state agency consultant, Barbara Martinez, Ph.D, reviewed Dr. Post's assessment and found that it was consistent with her review of plaintiff's record and was entitled to great weight. *Id.* at 107.

Plaintiff visited Dr. Mockler again in September 2011. Dr. Mockler noted that plaintiff was irritable when she was told about the results of her consultative evaluation and the suggestion that she may have hypochondriasis. R. at 427. In his assessment, Dr. Mockler stated that the cause of plaintiff's memory loss was "[d]ifferential: [d]ementia vs. [h]ypochondriosis [sic] vs. [m]alingering vs. brain damage secondary to past [m]eth use[.]" *Id.* On October 5, 2011, Dr. Mockler stated that plaintiff "continues to exhibit poor short term memory" and was quickly forgetting things that Dr. Mockler told her. *Id.* at 429. Dr. Mockler referred plaintiff to Dr. John Schulte for a psychiatric

consultation.  *Id.*

Dr. Schulte evaluated plaintiff on October 12, 2011.  R. at 430.  Dr. Schulte noted that, despite plaintiff's memory problems, she babysits her four-year-old grandson several days per week and said that she never neglects him or lets him out of her sight.  *Id.* at 430-31.  Plaintiff repeated 3/3 objects immediately and 1/3 after a few minutes, and named the other two objects with hints.  *Id.* at 431.  Dr. Schulte opined that plaintiff has depressive disorder and a cognitive disorder and assigned a GAF score of 50.  *Id.* at 431.

On April 27, 2012, plaintiff began treatment with Dr. Louise Walsh.  R. at 441. Plaintiff reported that her memory had been progressively worsening and had gotten much worse in the previous six months, and stated that she had episodes where she forgot where her grandson was.  *Id.*  In May 2012, plaintiff underwent another MRI, which was essentially unchanged from the previous one.  *Id.* at 452, 455.  In June 2012, plaintiff's boyfriend and friend accompanied her to an office visit with Dr. Walsh and stated that plaintiff's memory was worsening overall.  *Id.* at 457.  Plaintiff had not started a medication that Dr. Walsh had prescribed and appeared to have forgotten that it was prescribed.  *Id.*  In July 2012, Dr. Walsh noted that plaintiff's memory had improved in some aspects since she began taking medication.  *Id.* at 461-62.  Dr. Walsh stated that she was "[u]nable to fully rule out malingering or under influence of substances" as explanations for plaintiff's memory impairment.  *Id.* at 462-63.  On October 30, 2012, plaintiff again reported that her memory was improving some.  *Id.* at 470.  Dr. Walsh noted that plaintiff's depression seemed to worsen her memory issues, but stated that plaintiff was very reluctant to pursue counseling.  *Id.* at 472.

On March 13, 2013, plaintiff visited a neurologist, Dr. Lawrence Meredith, and reported that her memory continued to worsen. R. at 397. Dr. Meredith stated that plaintiff's short-term memory indicated that she did not suffer from early Alzheimer's disease and that her cognitive issues may be related primarily to concentration. *Id.* at 398.

In May 2013, Dr. Meredith and Dr. Walsh both completed questionnaires on plaintiff's functional abilities. Dr. Walsh opined that plaintiff "demonstrates significant impairment in memory and concentration due to cognitive limitations of her dementia." R. at 422. Dr. Walsh opined that plaintiff can hear and understand simple oral instructions, *id.* at 419, but is limited in her ability to communicate simple information and use a telephone, *id.*, and that her memory issues would constantly interfere with attention and concentration. *Id.* at 421. Dr. Walsh opined that plaintiff would require three or more absences from work per month as a result of her impairments. *Id.* Dr. Meredith stated that plaintiff has "significant difficulty with concentration and attention which interferes with her daily activities and certainly may interfere with her ability to seek competitive employment." *Id.* at 415. Dr. Meredith further stated that medical work-ups have been unrevealing and plaintiff is unable to afford formal neuropsychological assessment. *Id.*

### 1. Weighing Medical Opinions

#### a. Dr. Walsh

Plaintiff argues that the ALJ erred in assigning little weight to Dr. Walsh's opinion. Docket No. 17 at 28-34. The opinion of a treating physician is generally entitled to greater weight than that of a non-treating physician because of the unique

perspective derived from a treating relationship. 20 C.F.R. § 404.1527(c)(2). Thus, an ALJ must accord controlling weight to the opinion of a treating physician where that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Id.* Moreover, the opinion of a treating physician merits some measure of deference to be determined based on an application of the factors listed in 20 C.F.R. § 404.1527(c)(2), even if it is not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2)(i)-(ii). "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

As "findings of a nontreating physician based upon limited contact and examination are of suspect reliability," *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987), when such findings conflict with the opinions of a treating physician, the ALJ must examine the nontreating physician's report "to see if it outweighs the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 n.13 (10th Cir. 2004) (internal citations omitted). "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 404.1527(e)(2)(ii).

Here, the ALJ gave Dr. Walsh's opinion little weight because "[n]o other examiner has reached the same conclusion as Dr. Walsh, even though all examiners in this case have looked at the same evidence." R. at 27. The ALJ specifically noted that Dr. Tharp, who evaluated plaintiff in 2010, stated that plaintiff may benefit from

11

vocational counseling, suggesting she did not believe plaintiff was unemployable. *Id.* The ALJ further noted that Dr. Post opined that plaintiff can learn to perform simple tasks that require little judgment, and Dr. Meredith did not identify any "specific functional limitations." *Id.* Plaintiff argues that previous examiners, unlike Dr. Walsh, did not have the "longitudinal treating source notes, nor the 2012 MRI." Docket No. 17 at 32. Plaintiff does not explain, however, how any evidence that was available to Dr. Walsh, but unavailable to the other medical sources of record, weighs against Dr. Post's or Dr. Tharp's opinions.

Plaintiff also argues that, contrary to the ALJ's findings, several of plaintiff's treating physicians have made statements "generally in agreement" with Dr. Walsh. Docket No. 17 at 32. Plaintiff argues that the ALJ mischaracterized Dr. Meredith's opinion. The ALJ stated that Dr. Meredith "only tentatively concluded that [plaintiff's impairments] . . . 'may' interfere with her ability to work." R. at 27. Plaintiff contests this characterization and directs the Court's attention to the full text of Dr. Meredith's opinion, which states that plaintiff "appears to have *significant* difficulty with concentration and attention which interferes with her daily activities and *certainly* may interfere with her ability to seek competitive employment." Docket No. 17 at 22 (quoting R. at 415) (emphasis supplied by plaintiff). Plaintiff invites the Court to reweigh and re-interpret Dr. Meredith's opinion. This is improper. *Flaherty*, 515 F.3d at 1070. The ALJ's interpretation of Dr. Meredith's opinion, which used qualifying terms such as "appears" and "may," R. at 415, is reasonable. This is sufficient to satisfy the ALJ's burden of supporting his finding with substantial evidence, and the Court will not offer a competing interpretation of the evidence.

Plaintiff argues that the ALJ failed to discuss several pieces of evidence, including that Dr. Mockler filled out a Colorado Department of Human Services Med-9 form for plaintiff,[4] and the GAF scores ranging from 45-52 assigned by Drs. Tharp, Schulte, and Post.  Docket No. 17 at 33-34.  First, although Dr. Mockler's note indicates that plaintiff needed a Med-9 form filled out, R. at 346, there is no evidence of the form in the record and, therefore, no support for plaintiff's argument that the Med-9 form suggests that Dr. Mockler "generally agrees with Dr. Walsh that [plaintiff] cannot work[.]"  Docket No. 17 at 33.  Second, plaintiff's reliance on the various GAF scores assigned to her by Drs. Tharp, Schulte, and Post, standing alone, is misplaced.  "[A] low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."  *Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir. 2007) (unpublished).  The ALJ did not discuss the GAF scores with specificity, but he did discuss Dr. Tharp's evaluation and concluded that, given Dr. Tharp's recommendation of vocational counseling, Dr. Tharp did not believe plaintiff was unemployable.  R. at 27.  The ALJ similarly noted that Dr. Tharp and Dr. Martinez both opined that plaintiff was capable of sustaining simple, routine, and repetitive work activities.  *Id.*

### b.  Dr. Post

Plaintiff argues that, although the ALJ stated that he gave Dr. Post's opinion great weight, he erred by rejecting portions of that opinion.  Docket No. 17 at 33-34.  Specifically, plaintiff argues that, while the ALJ's RFC adopted Dr. Post's opinion that

---

[4]A Med-9 form is the form used in Colorado by county Departments of Human Services in determining medical eligibility for the State Aid to the Needy and Disabled Program.  *See* http://dhs.elpasoco.com/Documents/Med-9form4-08.pdf.

plaintiff is limited to carrying out short, simple instructions, the ALJ did not account for Dr. Post's opinion that plaintiff has marked impairment in sustaining concentration and pace. *Id.* at 34. The Court disagrees. The RFC specifically limits plaintiff to "a work environment free of fast-paced production requirements" and involving "few, if any, workplace changes." R. at 22. Plaintiff argues that, based on Dr. Post's opinion, the ALJ should have included in plaintiff's RFC the limitation that she would be off-task at work more than 10% of the time, Docket No. 17 at 34, a limitation that the VE testified would eliminate all employment. R. at 80. Dr. Post concluded that plaintiff would be able to "learn and perform simple tasks that required little judgment within a few days on the job." R. at 391-92. The ALJ accepted this opinion. The precise limitation that plaintiff argues should be included in her RFC, that she would be off task more than 10% of a work day, is nowhere to be found in Dr. Post's opinion or the opinion of any other treating source. Thus, the Court finds that the ALJ did not err in selectively accepting only portions of Dr. Post's opinion.

### 2. *Credibility*

Plaintiff argues that the ALJ's determination that her testimony was not fully credible is not supported by substantial evidence. Docket No. 17 at 35- 37. In assessing a claimant's credibility, the ALJ must evaluate both whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimed symptoms and, if so, whether the claimed intensity, persistence, and limiting effects of the symptoms are credible. *See* SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). "Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are supported by

substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Credibility determinations should not be conclusory, but instead "closely and affirmatively linked" to evidence in the record. *Id.* In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The ALJ must set forth "the specific evidence he relies on in evaluating the claimant's credibility," but is not required to undergo a "formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ noted that there is no objective evidence of underlying abnormalities that explain the severity of plaintiff's memory loss. R. at 26. The ALJ further noted that plaintiff has failed to follow up with specialists, has refused

medication despite indications that she may be responsive to medication, is entrusted with unsupervised care of her young grandson, and has only moderate restrictions to her activities of daily living. R. at 26.[5]

Plaintiff disputes each of the ALJ's credibility conclusions, arguing that Dr. Meredith has speculated about possible impairments that could cause plaintiff's memory loss, that plaintiff's failure to follow up with medical providers may have been because her healthcare provider, an indigent clinic, would not have paid for ongoing treatment, and that plaintiff may have had reasons for not taking medications. Docket No. 17 at 36. Regarding plaintiff's care of her grandson, plaintiff states that, because the child was four years old, he was capable of being helpful, and speculates that the family's circumstances may have left them with no alternatives to entrusting plaintiff with her grandson's care. *Id.* at 37. Regarding plaintiff's activities of daily living, she notes "numerous problems documented in the record," Docket No. 17 at 37, including the 2010 notation that plaintiff sometimes burned her dinner because she forgot she was cooking, plaintiff's self-reported limitations on personal care in her function report, and the testimony of plaintiff's boyfriend, who described plaintiff's difficulties with remembering how to cook and stated that plaintiff sometimes puts items in the wrong

---

[5]Plaintiff disputes certain other findings by the ALJ that plaintiff believes are relevant to the ALJ's credibility determination, including plaintiff's history of drug abuse and the fact that early records, including plaintiff's 2010 application for benefits, did not mention memory loss. Docket No 17 at 35-36; *see also* R. at 24. These were not specifically cited as reasons for the ALJ's credibility determination. Although, as plaintiff notes, the ALJ may have mixed his credibility determination into several pages of medical summary, the Court, having reviewed the ALJ's determination, finds that the ALJ's reference to plaintiff's drug use and to 2010 treatment notes in which memory impairments are not mentioned are not part of his credibility determination.

cupboards.  *Id.*; *see also* R. at 70.

Plaintiff's speculation does not demonstrate that the ALJ's credibility determination is not "closely and affirmatively linked" to supporting evidence.  *Kepler*, 68 F.3d at 391.  Plaintiff merely offers differing interpretations of the same evidence relied on by the ALJ.  Plaintiff's alternate interpretations are not a proper basis to reject the ALJ's findings, whether or not the Court would find them persuasive.  *Ellison*, 929 F.2d at 536 (the Court "must evaluate the record to ascertain whether there is evidence to support the ALJ's decision, regardless of whether [it] would have reached a different result based on the record").

Regarding plaintiff's activities of daily living, plaintiff does not challenge the ALJ's findings concerning her capabilities; she merely points to instances in the record that support limitations.  The ALJ did find moderate restrictions, however.  R. at 26.  Plaintiff, in essence, asks the Court to find that the ALJ should have given greater weight to her limitations and lesser weight to her capabilities, which the Court will not do.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  The limitations that plaintiff points out do not overwhelm the ALJ's findings, *see Musgrave*, 966 F.2d at 1374, and the Court is otherwise satisfied that the ALJ's conclusions are supported by substantial evidence.

### III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff Melody Ann Belden was not disabled is **AFFIRMED**.

DATED March 31, 2016.

                                    BY THE COURT:

                                    s/Philip A. Brimmer
                                    PHILIP A. BRIMMER
                                    United States District Judge